STATE OF CONNECTICUT *v.* ESTATE OF HELEN CHINA

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 326353
NEW HAVEN

Memorandum filed April 22, 1993

*Robert A. Nagy,* assistant attorney general, and *Richard Blumenthal,* attorney general, for the plaintiff, state of Connecticut.

*Jacobs, Grudberg, Belt & Dow,* for the defendant, Pamela China, administratrix (Estate of Helen China).

HODGSON, J. The state appeals from the ruling of the Probate Court for the district of New Haven, *Keyes, J.,* approving a final accounting of the estate of Helen China. Specifically, the state alleges that the Probate Court erred by (1) refusing to distribute to the state the full amount of a personal injury recovery by the estate of Helen China for injuries she suffered before her death, (2) by allowing a priority payment for medical bills and liens, and (3) by allowing counsel fees for services in the personal injury action and for "probate work."

The parties have stipulated to the following facts. At the time of the death of China on February 10, 1987, the principal asset of her estate was a personal injury action in which she sought compensation for injuries suffered in a fall. Prior to her death, the state filed a timely lien against the proceeds in that action pursuant to General Statutes § 17-83f for benefits China had received from the Aid to Families with Dependent Children program. With the approval of the Probate Court, the personal injury case was settled after China's death for $19,500. Pursuant to General Statutes § 17-83g, the state filed a timely claim against the estate for recovery of all public assistance payments made to the decedent.

After the defendant administratrix had denied its claim against the estate, the state obtained a judgment against the estate in the amount of $75,861.97 in an action captioned *State* v. *Pamela China, Adminis-*

*tratrix (Estate of Helen China),* Superior Court, judicial district of New Haven, Docket No. 267331S (February 9, 1990).

On or about April 4, 1991, the administratrix filed with the Probate Court her proposed final accounting, allocating only one half of the net assets to the state. On September 27, 1991, the Probate Court, *Keyes, J.,* issued a memorandum of decision ruling that the state was entitled to recover from the estate only one half of the net proceeds of the personal injury action, not *all* of the net proceeds.

The state has filed this appeal from the decision of the Probate Court in timely fashion.

Having taken judicial notice of the case captioned *State* v. *Pamela China, Administratrix (Estate of Helen China),* supra, the court finds further that the state in that case sought reimbursement for $75,861.97 in public assistance paid to China during her lifetime, and the administratrix filed a special defense claiming that § 17-83f limits the extent to which the state can collect its claim. The court, *Mulvey, J.,* rendered judgment for the state in the amount of $75,861.97 without a written decision or any mention of any adjudication of the special defense based on § 17-83f or either of the other two special defenses asserted by the administratrix. No appeal was taken from that judgment.

In reviewing the proposed final accounting of the administratrix, the Probate Court approved, over the state's objection, a credit for "outstanding medical bills and liens" in the amount of $1587.28, and a credit in the amount of $6333.33 for the fee charged by Jacobs, Grudberg, Belt and Dow in prosecuting the personal injury case and a $1000 credit for "probate work."

The Probate Court also approved a distribution of the remaining assets of the estate, which amounted to $1563.27, such that $781.64, or 50 percent, was to be paid to the state for the welfare reimbursement and the remaining 50 percent was to be divided among China's three statutory heirs.

An appeal from probate results in a trial de novo by the Superior Court of the issue decided in the Probate Court. *Prince* v. *Sheffield,* 158 Conn. 286, 293, 259 A.2d 621 (1969). Such an appeal "presents for redetermination both the questions of law and the questions of fact which are embraced within the order or decree appealed from." *Miller* v. *Miller,* 158 Conn. 217, 224, 258 A.2d 89 (1969), citing *Stevens' Appeal,* 157 Conn. 576, 580, 255 A.2d 632 (1969); *Willard* v. *McKone,* 155 Conn. 413, 416, 232 A.2d 322 (1967); *Boschen* v. *Second National Bank,* 130 Conn. 501, 503, 35 A.2d 849 (1944); *Haverin* v. *Welch,* 129 Conn. 309, 315, 27 A.2d 791 (1942).

While the state argues that the Probate Court had no jurisdiction to decide what it referred to in its memorandum of decision as "the interplay of" General Statutes §§ 17-83e, 17-83f and 17-83g and the statutes concerning claims against decedents' estates, General Statutes § 45a-390 et seq. (formerly General Statutes § 45-204a et seq.), the Probate Court clearly had jurisdiction to review the account of the administratrix pursuant to General Statutes §§ 45a-177 through 45a-179 in accordance with applicable law.

Accordingly, this court, upon appeal, must determine whether the features of the account of the administratrix challenged by the state should be approved. In so doing, this court must determine whether the proper application of § 17-83f is a matter of res judicata as a result of the judgment in *State* v. *Pamela China, Administratrix (Estate of Helen China),* supra.

The state claims that the res judicata effect must be given to the prior judgment of the Superior Court, which the state reads as rejecting the special defense based on § 17-83f and requiring *all* of the net proceeds of the personal injury action to be used to reimburse the state for benefits paid to the decedent during her lifetime.

The complaint in *State* v. *Pamela China, Administratrix (Estate of Helen China),* supra, alleges that the plaintiff paid the decedent, Helen China, $75,861.97 during her lifetime, that the administratrix denied the state's claim for reimbursement of that amount, and that the state was bringing its action upon that claim. The defendant filed an amended answer and a first special defense alleging that: "Section 17-83f Connecticut General Statutes, limits the extent to which plaintiff may collect its claim." The court rendered judgment in favor of the state in the full amount claimed, $75,861.97.

The doctrine of res judicata prevents a litigant from reasserting a claim that has already been decided on the merits between the same parties. *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988). The doctrine of collateral estoppel precludes the relitigation of a claim fully and fairly litigated in a prior action, if the issue was actually decided and the decision was necessary to the judgment. *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 402, 546 A.2d 284, aff'd, 211 Conn. 67, 557 A.2d 540 (1989); *State* v. *Ellis,* 197 Conn. 436, 462, 497 A.2d 974 (1985); 1 Restatement (Second), Judgments § 27 (1982).

The complaint filed by the state in the case tried by Judge Mulvey; *State* v. *Pamela China, Administratrix (Estate of Helen China),* supra; concerned a claim for reimbursement of benefits paid to Helen China. The allegations of the complaint did not seek a determina-

tion of the distribution of the assets of the estate as a whole. In her first special defense, however, the administratrix asserted that "the entire gross value of the decedent's estate arises from what was a pending chose in action, a claim for damages for personal injuries sustained in a fall," and alleged that "[s]ection 17-83f, Connecticut General Statutes, limits the extent to which the plaintiff may collect its claim."

The issue raised in *State* v. *Pamela China, Administratrix (Estate of Helen China),* supra, was whether the state had a valid claim for reimbursement for the amount of public assistance provided to Helen China. The special defense asserted, in effect, that the claim was invalid because § 17-83f permits collection from her estate of only one half of the amount of Helen China's tort recovery.

The estate's special defense was simply irrelevant to the issue raised in the complaint: the state had a claim for the whole amount of benefits paid regardless of the extent to which that claim could be satisfied from the proceeds of the tort recovery. The complaint does not allege that the proceeds of the tort recovery were the only asset of the estate, and the judgment must therefore be read as establishing only that the state had a valid claim for $75,861.97, not that the court was determining the extent to which that claim could be satisfied from the proceeds of the tort recovery.

The doctrines of collateral estoppel and res judicata bar litigation only of claims that were necessarily determined in prior litigation. *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 296, 596 A.2d 414 (1991); *Virgo* v. *Lyons,* supra, 501. The issue of collectability of the state's claim from the proceeds of the tort recovery was not necessarily determined in adjudicating the claim in the prior litigation, and the court must, therefore, conduct a de novo review of the correctness of the accounting prepared by the administratrix.

It is uncontested that the estate had assets amounting to $24,324, of which $19,500 was the tort recovery. The state does not dispute the reduction of this amount by $375 in expenses for the decedent's last illness, and by $1000 for funeral and other expenses.

The state disputes the priority payment of $1587.28 in additional medical bills and liens and for attorney's fees. The state objects further that it is entitled to all of the residue of the estate, not to one half, as proposed by the administratrix.

The court finds that the accounting of the administratrix cannot be accepted because it fails to give effect to § 17-83g. That statute provides that, upon the death of a beneficiary of state aid, except in certain circumstances set forth in § 17-83e, not applicable here, "the state shall have a claim against such . . . person's estate for *all amounts paid* . . . for which the state has not been reimbursed, to the extent that the amount which the surviving spouse, parent or dependent children of the decedent would otherwise take from such estate is not needed for their support." (Emphasis added.) There is no claim that the decedent left a surviving spouse, parent, or dependent children, and the court therefore concludes that this exception is inapplicable.

The administratrix urges that although § 17-83g provides that the state may recover from an estate "all amounts paid," effect must also be given to § 17-83f, which provides that in cases of causes of action of beneficiaries of state aid, the claim of the state is a priority lien against the proceeds only in the amount of 50 percent. The administratrix claims that both statutes can be given full effect, as is required by principles of statutory construction, only by applying to estates the same limitation as applies to tort recoveries by living beneficiaries of state aid. Such is not the

case. This court construes the two statutes as applying different extents of recovery of state aid in two different situations: where a recipient receives a tort recovery during his or her lifetime, the recovery is authorized by § 17-83e but limited by § 17-83f to one half of the net proceeds; where a recipient has died and the recovery is authorized from an estate, the state's claim for reimbursement has priority over all claims except those specifically enumerated in § 17-83g.

Section 17-83f, on its face, concerns "causes of action of beneficiaries," not causes of action of the estates of beneficiaries.

Section 17-83g contains no exemption or exception for situations in which the only asset or main asset of the estate is the proceeds of a tort recovery. Rather, the statute provides that the state may recover "all amounts paid." Unlike § 17-83e, which governs reimbursement from living beneficiaries of aid, § 17-83g does not specifically incorporate the provisions of § 17-83f.

Where statutes are claimed to be repugnant to each other, if both can be construed together, both are to be given effect. *Dugas* v. *Lumbermen's Mutual Casualty Co.*, 217 Conn. 631, 641, 587 A.2d 415 (1991); *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 195, 554 A.2d 287 (1989); *Hirschfeld* v. *Commission on Claims*, 172 Conn. 603, 607, 376 A.2d 71 (1977).

When two statutes relate to the same subject matter, every effort must be made to find a reasonable field for the operation of both, and where there is a reasonable field of operation for each statute that does not impinge on the domain of the other, it is the court's duty to give them concurrent effect. *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 553, 546 A.2d 226 (1988). The legislature is presumed to be aware and to have knowledge of all existing statutes

and the effect that its own action or inaction may have on them. *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 593–94, 427 A.2d 425 (1980).

The administratrix argues that § 17-83f should be read as a limitation upon § 17-83g because allowance of recovery of all benefits paid would be a disincentive to the maintenance and settlement of tort actions by the estates of past beneficiaries of public benefits. If the General Assembly had, in fact, wanted to retain the same incentive as to estates that it provided as to living recipients, it could have done so by making a specific provision in the statute concerned with recovery from estates as it did in § 17-83e. Its failure to do so can be reasonably read as a decision that, where the tort claimant is deceased, the claimant will not need the proceeds as compensation for the injury suffered, and the interests of dependents are accounted for in the provisions of § 17-83g that exempt amounts needed for their support. (Though this issue is not presented in the present case, it may be that a decedent bears dependents who need support; there is no lien pursuant to § 17-83f to diminish the assets distributable to such dependents.)

The proposed accounting lists $1587.28 in "outstanding medical bills and liens" as expenses to be paid before the claim of the state for reimbursement for benefits. Section 17-83g provides that the state's claim for reimbursement "shall have priority over all unsecured claims against such estate, except (1) expenses of last sickness not to exceed three hundred seventy-five dollars . . . ." No other medical expenses are given priority. Accordingly, this court finds that the accounting must be rejected to the extent that it recognizes such claims. While the medical expenses at issue are characterized as "liens," the administratrix did not prove the existence of any lien, and there is no evidence

before the court to support any conclusion that the expenses at issue were other than unsecured claims.

The state also contests the portion of the proposed accounting that gives priority to the legal fees incurred in securing the tort recovery ($6333.33) and legal fees in the amount of $1000 for "probate work." Section 17-83g enumerates administrative expenses as one of the claims that may be given priority over the state's claim for reimbursement, and sets a formula for such expenses. That statute provides that: "Upon petition by any fiduciary, the probate court, after a hearing thereon, may authorize compensation in excess of the above schedule for extraordinary services." It may well be that securing legal counsel to pursue a tort claim would be properly held to be an administrative expense justifying authorization of additional administrative expenses. This court has not, however, been presented with any petition to that effect. Since the Probate Court construed § 17-83f as applicable, and since that statute allows for deduction of attorney's fees incurred in securing the tort recovery, the Probate Court has not had an opportunity to determine whether the attorney's fees at issue may properly be given priority pursuant to § 17-83g. Because this court has jurisdiction only to decide appeals from determinations made by the Probate Court, and the allowance of these counsel fees has not been the subject of a petition to the Probate Court in accordance with the procedure set forth in § 17-83g, this court is without jurisdiction to determine this issue at this time.

The appeal from probate is sustained in part; the accounting of the administratrix is rejected to the extent that it gives priority to $1587.28 in medical bills and to the extent that that it fails to allocate to the state all assets other than those to which § 17-83g allows priority or as to which no appeal has been filed. This court lacks jurisdiction to determine the issue of the contested

attorney's fees in the amount of $7333.33 until such time as the administratrix files a petition for allowance of such fees as administratrive expenses pursuant to § 17-83g and the Probate Court rules on that petition.

In accordance with the above, the administratrix is hereby ordered to file in the Probate Court by May 15, 1993, an accounting that reflects that the net proceeds of the tort recovery are an asset of the estate and that after the deduction of only those amounts authorized pursuant to § 17-83g or previously approved by the Probate Court and not appealed to this court, distribution shall be to the state of Connecticut of all remaining assets of the estate.