JOSEPH M. CALDRELLO *v.* PLANNING BOARD
OF THE CITY OF NEW LONDON

JOSEPH M. CALDRELLO *v.* NEW LONDON CITY
COUNCIL ET AL.
(12108)

HEALEY, PARSKEY, SHEA, GRILLO and COVELLO, Js.

---

Argued April 13—decision released June 19, 1984

*Francis J. Pavetti,* with whom, on the brief, was *Jane W. Freeman,* for the appellant (plaintiff).

*Myron B. Bell,* for the appellees (defendants).

GRILLO, J. This appeal arises from the denial by the defendants, the planning board of the city of New London (hereafter the board) and the city council of New London (hereafter the council), of the plaintiff Joseph Caldrello's subdivision application. The case comes before us as consolidated appeals from the trial court's

denial of the plaintiff's requests for writs of mandamus compelling the defendants to approve the subdivision application. We find error.

The property proposed to be subdivided is located in the city of New London directly across from the Osprey Beach Club, which is also owned by the plaintiff. The board denied the plaintiff's subdivision application on January 10, 1980, claiming that the proposed development presented serious traffic, parking and drainage problems. Thereafter, on January 21, 1980, the application was presented to the council which referred the matter to the council committee on administration. The council committee on administration met on February 11, 1980, and voted to refer the matter back to the board, which again voted against approval. When the plaintiff's appeal of the board's denial to the Superior Court was dismissed, an amended complaint was filed seeking a writ of mandamus to compel the board to approve the application.

The council met on October 6, 1980, and voted to drop the matter from the agenda. The plaintiff subsequently asked the council to issue a certificate of approval under General Statutes § 8-26 for its failure to act on the application within sixty-five days. Since the council did not respond to this demand, the plaintiff filed his second action seeking to compel by mandamus the approval of the application by the council. The trial court, *Goldberg, J.*, heard the case in June, 1982, and denied the requests for the issuance of the writs of mandamus against both the board and the council. The appeals were combined on April 15, 1983.

The issues raised in this appeal involve the interpretation of the provisions of the charter of the city of New London with respect to subdivision plans and subdivision regulations administered by the council. Sections 2, 3 and 4 of the subdivision regulations establish the

procedure for approval of subdivision applications. Section 2 is titled "Approving Agency" and provides: "The approval provisions of this ordinance shall be administered by the city council *after approval* by the city planning and zoning commission and the city engineer in accordance with the Charter and ordinances of the City of New London." (Emphasis added.) Section 3 (8) defines "final approval" as "[a]pproval of the final subdivision plan by the city council *after approval* of the city engineer and the planning and zoning commission."[1] (Emphasis added.)

Sections 88, 89 and 90 of the charter of the city of New London govern the duties of the board. Section 91 provides in relevant part that "[A]ll acts of the council . . . shall be submitted to the planning board for report and recommendations. . . . No action by the council . . . shall be legal or binding until it shall have been referred to the board and until its recommendations thereon shall have been presented to the council."

The defendants argue on appeal that § 91 of the charter requires approval by the board as a condition precedent for approval of the subdivision plan. They maintain that it was not necessary for the council to take any action in this case since the board did not approve the plaintiff's subdivision plan. Furthermore, they claim that this requirement of preliminary approval by the board is neither inconsistent nor in conflict with any provision of the charter. We disagree.

The word "recommend" is defined as "to advise or counsel." See Black's Law Dictionary (5th Ed.). Where a statute requires recommendations from one panel to another such recommendations are merely advisory and the latter panel may accept or reject the recommen-

---

[1] At the time of appeal, there was no planning and zoning commission, only the board. Therefore, when the regulations refer to the planning and zoning commission, they are referring to the board. The city charter was subsequently amended to create a planning and zoning commission.

dations. *Catino* v. *Board of Education,* 174 Conn. 414, 416–17, 389 A.2d 754 (1978). Section 91 of the charter cannot be construed to require approval of the board as a condition precedent to final approval by the council. While the charter language indicates a close relationship between the board and the council, it is clear that the final authority relative to planning and related actions reposes in the council.

The provisions of the subdivision regulations which require approval of the subdivision plan by the board before approval by the council are inconsistent and in conflict with the express terms of the charter. "The power of the city to enact an ordinance depends primarily on whether the ordinance is in harmony and consistent with the power delegated to it by the state . . . . An attempt, by ordinance, to exercise a function authorized by the charter in a manner inconsistent with the provisions of the charter is ineffective and invalid. *Connelly* v. *Bridgeport,* 104 Conn. 238, 253, 132 A. 690 [1926]." *Bredice* v. *Norwalk,* 152 Conn. 287, 292–93, 206 A.2d 433 (1964). Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful. *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 594, 427 A.2d 425 (1980); *Food, Beverage & Express Drivers Local Union* v. *Shelton,* 147 Conn. 401, 405, 161 A.2d 587 (1960).

We find that the city of New London could only enact subdivison regulations conforming with the powers granted to the municipality by its charter. The charter specifically limited the power of the board to the making of recommendations. The provisions in the subdivision regulations requiring board approval as a condition precedent represent a conflict with the charter and are, therefore, void. Since recommendations are merely advisory, and may be accepted or rejected by

the final authority, the New London subdivision regulations are invalid to the extent that approval by the board, as opposed to the making of recommendations, would be required for subdivision plans. It was, therefore, incumbent upon the council to act on the subdivision plan irrespective of the provisions of the subdivision regulations requiring board approval and irrespective of the action taken by the board.

Since the council failed to act on the subdivision plan, approval of the plan is mandated by operation of law under the provisions of General Statutes §§ 8-26 and 8-26d which establish a definite timetable during which the planning and zoning commissions must act. *Finn v. Planning & Zoning Commission*, 156 Conn. 540, 544, 244 A.2d 391 (1968). Failure by the commission to act within the time parameters results in the approval of the subdivision application by operation of law. In cases where no public hearing is scheduled on the application, the maximum time allowed is 100 days from the date of the application, consisting of thirty-five days of trigger time and sixty-five days of running time. See *Viking Construction Co. v. Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980). Section 8-26d (c) provides that the maximum period of thirty-five days trigger time starts on the day following "submission to such board or commission or its agent of such application . . . ."

In the present case, the time started to run on January 22, 1980, the day after submission of the plan to the council. Since no action was *ever* taken by the council which, on October 6, 1980, dropped the matter from its agenda, the plaintiff's application was approved by operation of law pursuant to § 8-26. The plaintiff had a legal right to the issuance of a certificate to that effect. *Viking Construction Co. v. Planning Commission*, supra, 247–48.

There is error, the judgment of the trial court is set aside, and the case is remanded to the trial court to render judgment directing the council to approve the plaintiff's subdivision plan.

In this opinion the other judges concurred.