[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant City of West Haven has moved for summary judgment claiming that the employment contract on which the plaintiff bases his claims is unenforceable because it is superseded by provisions of the City Charter. The plaintiff's claims against the City are set forth in Counts 1 and 3 of the complaint. CT Page 5560
In his complaint, the plaintiff, Richard A. Pearce, alleges that on May 13, 1991, the defendant city entered into a written employment contract with him by which it agreed to employ him for a period of three years, commencing on June 1, 1991. The contract, which was executed by then Mayor Clemente F. Evangeliste, Jr., identifies the duties of the position as follows:
 The Employee is hereby engaged as Comptroller of the City of West Haven. His duties are set forth in the Charter of the City of West Haven and the Connecticut General Statutes.
The term of employment identified in the contract is from June 1, 1991 to May 31, 1994.
The plaintiff alleges that when defendant H. Richard Borer became Mayor in December 1991, the City dismissed the plaintiff from the position of comptroller in violation of the contract. The plaintiff claims that the City of West Haven breached the contract and that it "intentionally, tortiously, wrongfully and recklessly, interfered with expressed contractual rights of the plaintiff," pursuant to the cited contract.
In its motion for summary judgment, the city asserts that the contract on which the plaintiff relies was invalid and unenforceable because provisions of the City Charter provide that the term of office for the position held by the plaintiff expires with the term of the mayor who appoints him.
The city has presented affidavits to establish that Mayor Evangeliste took office in December 1989, that the City Charter was in effect at that time and at least until December 2, 1991, and was not amended in relevant part during that time, that Mayor Evangeliste was defeated by H. Richard Borer in the mayoral election of November 1991, and that Mayor Borer took office on December 1, 1991.
The City Charter provides for mayoral appointments to the office of Director of Finance and to the office of Comptroller Chapter X of the Charter provides as follows:
 There shall be a Department of Finance which shall supervise the following activities of the Comptroller, purchasing, insurance, tax CT Page 5561 collection and property assessing. The Mayor shall appoint a Director of Finance, who may also be the Comptroller and whose term shall run concurrently with that of the Mayor.
The same chapter of the Charter describes the various divisions within the department of finance, which are the divisions headed by the comptroller, tax collector and assessor. With regard to the Comptroller, the Charter provides as follows:
 Section 1. The Comptroller: The Mayor may appoint and may remove a Comptroller who shall have direct supervision and administration over the Comptroller's Office.
The Charter enumerates in great detail the duties and powers of the Comptroller.
The Charter also provides, at Chapter 3, Section 3 that:
 the Mayor shall appoint all department heads, commissions, nonclassified personal and other officers and employees of the City, except as otherwise specifically provided by this Charter, and except employees in the offices of elected officers or boards and officers or boards appointed by the Council. The terms of all such appointees shall terminate on the same date as the term of the Mayor except as otherwise provided; however, such appointees may continue to serve until their successors are appointed and qualified.
The issue raised by the City is whether the plaintiff can enforce his employment contract or whether it is unenforceable because it is at variance with the provisions of the City Charter concerning the terms of employment of City officials.
I. Standard of Review
Summary judgment shall be rendered if "the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. CT Page 5562
The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law. Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly,180 Conn. 430, 434 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (citations omitted, internal quotations omitted.) Connell v. Colwell, 214 Conn. 242, 246-47 (1990).
Though the plaintiff asserted at oral argument that there are genuine issues of material fact as to the nature of plaintiff's duties, the affidavits and other submissions do not, in fact, raise any such issues. On its face, the contract that the plaintiff seeks to enforce provides that his duties are the duties of the position of comptroller "as set forth in the Charter of the City of West Haven and the Connecticut General Statutes."
Accordingly, it appears that the facts are not in dispute and the only issues are legal ones concerning 1) whether the position of comptroller is one subject to Chapter III, Section 3 of the City Charter and, if so, 2) whether a contract that would limit a subsequent mayor's exercise of the powers of Chapter III, Section 3 is authorized by the Charter and whether it is valid and enforceable.
The plaintiff does not claim that a prior ruling on a motion for summary judgment as to counts of the complaint against another defendant is the law of the case as to the counts against the City.
II. APPLICABILITY OF CHARTER CHAPTER III, SECTION 3.
Chapter III, section 3 provides that the terms of certain appointees of the city terminate on the same date as the term of the Mayor "except as otherwise provided." The appointees subject to this limitation as to the term of their employment are defined as "all department heads, commissions, non-classified personnel and other officers and employees of the City, except as otherwise specifically provided by this Charter, and except employees in the offices of elected officers or boards and officers or boards appointed by the Council." CT Page 5563
The contract on which the plaintiff relies specifically states that his position was that of comptroller, as defined in the Charter. The comptroller is not defined in the Charter as a "commissioner;" and the Charter contains no specific provision concerning the termination of the comptroller other than that the mayor may appoint and remove a person from that position.
Accordingly, the issue is whether the position of comptroller is one of the "non-classified personnel and other officers and employees of the City" that are appointees whose terms are, by Charter, coterminous with the term of the Mayor. While collective bargaining agreements may, under certain circumstances, constitute waivers of powers granted to city management by Charter, see § 7-474 (c) C.G.S., the plaintiff does not claim that the position of comptroller was part of the classified service or of any bargaining unit. Rather, he submitted the deposition testimony of the Mayor who signed the contract with him, Clemente F. Evangeliste, who testified that the comptroller was probably the only department head not included in a bargaining unit in West Haven. (Evangeliste Deposition, pp. 33-34). This court concludes that the position as comptroller is subject to the provisions of Chapter III, Section 3 of the Charter.
III. Enforceability of the Contract
Since this court has determined that the position which is the subject of the employment contract or what the plaintiff relies is one which, pursuant to the City Charter, is subject to the provision that its term expires with the term of the Mayor, the court must decide whether the Mayor had authority to enter into a contract on behalf of the city that was at variance with this provision.
The authorized powers of the Mayor of the City of West Haven are set forth in Chapter III of the Charter. Those enumerated powers do not specifically include the power to vary the provisions of the Charter. Section 3 of Chapter III, cited above, defines the Mayor's powers with regard to appointments and the terms of appointees. This provision does not, by its terms, grant the Mayor the power to enter into contracts that contain provisions at odds with the Charter provision for expiration with the Mayor's own term. Viewed another way, the Charter does not, on its face, give the Mayor the ability to limit the appointment prerogatives of future mayors by appointing people to key positions in their CT Page 5564 administrations. The plaintiff argues that the phrase "unless otherwise provided" in Chapter III, Section 3 should be read as an authorization to the Mayor to avoid the limitation of the Charter with regard to terms of appointment by inserting other provisions in contracts. This court finds it inappropriate to attach so considerable a power to such a phrase, especially since the more logical meaning, in the context, is with reference to other provisions in the Charter itself or in other applicable provisions of law. Clearly, the right to enter into multi-year contracts to employ key officials would be at odds with the evident scheme in the City Charter to enable a new mayor to appoint compatible top officials upon election.
Contracts that are beyond the legal authority of the public officials who enter into them are ultra vires and unenforceable.Sheehan v. Altschuler, 148 Conn. 517 (1961). Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful. Norwalk v. Board of LaborRelations, 206 Conn. 449, 452 (1988); Caldrello v. Planning Board,193 Conn. 387, 391 (1984).
It is the court's determination that the contract invoked by the plaintiff was not within Mayor Evangeliste's powers under the Charter, and that, as an ultra vires act, it is unenforceable. Some ultra vires contracts entered into on behalf of municipalities may be rendered enforceable by ratification, as where a municipality has accepted and benefitted [benefited] from services provided. Pepe v. New Britain, 203 Conn. 294 (1987). In the case before the court, it is undisputed that the City did not accept the services of the plaintiff after the date on which the Charter operated to end the plaintiff's term upon the expiration of Mayor Evangeliste's term. The court therefore finds that the contract did not become enforceable by virtue of ratification.
The court finds that, as a matter of law, the contract on which the plaintiff bases his claims in counts 1 and 3 of his complaint is invalid and unenforceable, to the extent that it is at odds with the provisions of the Charter, and the City's motion for summary judgment is therefore granted.
Beverly J. Hodgson Judge of the Superior Court CT Page 5565